JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TRIBANK CAPITAL INVESTMENTS, INC.,

            Plaintiff,

        vs.

ORIENT PAPER, INC., et al.,

            Defendants.

CASE NO. CV11-3708-R

ORDER DISMISSING PLAINTIFF'S COMPLAINT FOR IMPROPER VENUE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(3)

## I.    Mandate From the Ninth Circuit

The Ninth Circuit reversed and remanded this Court's Order of September 21, 2011, dismissing Plaintiff Tribank Capital Investments, Inc.'s, ("Tribank") Complaint for improper venue. Mandate, No. 11-56327, ECF No. 21. In doing so, the Ninth Circuit held that the record was not developed enough to conclusively determine that the relationship between Tribank and Linear Capital Asia ("Linear") permitted the contract signed by Linear containing the Hong Kong forum selection clause to be enforceable against Tribank. The Ninth Circuit noted that "[t]he mere fact of sole ownership and control [of Tribank by Brad Stewart] does not eviscerate the separate corporate identity [of Linear] that is the foundation of corporate law." Mandate, at 3 (quoting *Katzir's Floor & Home Design, Inc. V. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004)). Thus, the Ninth Circuit instructed the Court to hold an evidentiary hearing on the issue.

In addition to remanding with instructions to conduct an evidentiary hearing, the Ninth Circuit also indicated that the Court should explore the effect of Tribank's implicit reliance on the Consulting Agreement to form the terms of its contract with Orient Paper, Inc. ("Orient") on the enforceability of the forum selection clause - or, in the alternative, the Court should explore whether another contract exists to form the basis for Tribank's Complaint. The Ninth Circuit suggests that Tribank cannot have it both ways: either the Consulting Agreement provides the terms of the agreement between the parties, and therefore the forum selection clause is enforceable, or another contract must exist. If, however, that contract cannot be produced, then the Court should dismiss for failure to state a claim upon which relief may be granted. *See* Mandate, at 3-4.

## II.   Evidentiary Hearing

Pursuant to the Mandate, the Court was ordered to determine, after hearing and seeing the evidence presented by Tribank and Orient at the evidentiary hearing, whether Tribank and Linear are one legal entity for purposes of the contracts between Tribank, Linear, and Orient, and therefore whether the forum selection clause is enforceable. Following the evidentiary hearing, the Court concludes that the evidence demonstrates that:

a. Tribank is a U.S. corporation solely owned by Brad Stewart. Its business is to connect investors with corporations and to provide consulting services relating to raising capital investment.

b. Orient is part of a China corporate conglomerate dealing in the business of paper products. Between 2007 and 2009, Orient was looking to raise capital investment to expand its business.

c. During that same time, Brad Stewart was introduced to Orient. Upon contacting Orient's management, Stewart offered the services of his company Tribank. The two parties then signed a Confidentiality Agreement. Later the parties executed a Reciprocal Agreement. And sometime thereafter, Linear, another company owned and controlled by Brad Stewart, signed a Consulting Agreement with Orient.

d. At the evidentiary hearing, Brad Stewart expanded the record and explained the relationship between Linear and Tribank. In short, Tribank is consulting company

formed in the United States with its principal place of business in Los Angeles, California. Brad Stewart is the sole shareholder, president, chief executive officer, and corporate secretary of Tribank. Brad Stewart is also a 50% shareholder, the president, and the chief executive officer of Linear, which is incorporated in Hong Kong, but shares a business office in California with Tribank. Brad Stewart stated that Linear was formed in September 2007, just prior to when Brad Stewart and Orient began discussing a consulting arrangement.

e.    There are only two other employees of Tribank: Brad Stewart's brother, and a translator. Similarly, Linear has only a few other employees: a translator and Christina Zhou who co-owns the other 50% stake in the company.

f.    None of those other employees were involved in the transactions at issue. In fact, Brad Stewart signed all of the agreements at issue as the president and chief executive officer of the respective companies. Brad Stewart stated that at the time he signed the agreements it was understood that he would be providing his services to Orient through his companies in both the United States and China.

From the evidence presented at the hearing, the Court concludes that Brad Stewart treated Linear and Tribank as one corporate entity. It seems the purpose of forming Linear was merely to transact Tribank's business in Hong Kong. At minimum, Brad Stewart, as president and chief executive officer of both companies, did not treat the corporations as separate entities. He used the same business address for both entities in California. He signed agreements in the name of Linear which he understood to supersede prior agreements entered into by Tribank. At least with respect to the business transacted with Orient, the Court concludes that Tribank and Linear were one in the same corporate entity.

In addition to the evidence enlightening the relationship between Tribank and Linear, the parties also revealed more detailed evidence regarding the contractual structure of the relationship between Tribank and Linear and Orient. At base, there were three contracts signed by Brad Stewart's companies and Orient.

The first contract is the so-called Confidentiality or Non-Circumvention Agreement. In this agreement, there is no compensation term whatsoever, which Brad Stewart acknowledged at the

1  evidentiary hearing. In the Non-Circumvention agreement, there is also a forum-selection clause

2  designating California as the proper forum for any litigation. The contract also contemplates that a later

3  written agreement would be executed to memorialize terms of compensation.

4       The second contract is the so-called Reciprocal Agreement. In this agreement, the parties agree

5  generally to assist each other in carrying out the object of the business relationship, namely, to secure

6  financing and restructuring for Orient. Unlike the Non-Circumvention Agreement, the Reciprocal

7  Agreement does contain a compensation clause. In the clause, Orient agrees to pay Tribank a 5%

8  "finders fee." The Reciprocal Agreement also contains a forum selection clause identifying California as

9  the appropriate forum for any litigation.

10      Finally, the third contract is the so-called Consulting Agreement. There are four clauses

11  contained in the contract which form the subject of this litigation. First, there is the compensation

12  clause. It provides that Orient is to pay Linear a fee of 15% of Orient's equity after restructuring.

13  Second, there is a forum selection clause. It provides that the agreement is to be "governed and

14  construed and enforced in accordance with The Basic Law of the Hong Kong Special Administrative

15  Region . . . applicable to Agreements to be entered into and entirely performed in such jurisdiction . . .

16  and subject to the exclusive jurisdiction of courts located in the Hong Kong Special Administrative

17  Region." The parties dispute both the meaning and applicability of this clause. Third, there is a waiver

18  and amendment clause. It provides that all amendments to the agreement must be in writing. Fourth,

19  there is a termination provision. In this provision, the contract purports to supersede and replace the

20  Reciprocal Agreement entered into between Tribank and Orient.

21      Based on the evidence presented at the evidentiary hearing, the Court finds the remanded

22  questions appropriate for disposition without a hearing and takes the matter under submission. L.R.

23  7-15. **III.   Legal Analysis**

24       To treat two entities, or an individual controlling an entity, as one in the same, the Court must

25  find that: (1) a unity of interest and ownership [exists] such that the separate identities of the

26  corporation[s] [or] the individual no longer exist; and (2) if the acts are treated as those of [one]

27  corporation alone, an inequitable result will follow. *Moreland v. Ad Optimizers, LLC*, CV 13-00216,

28  2013 WL 3786311, (N.D. Cal., July 18, 2013). Following the evidentiary hearing, the Court finds the

1    alter ego doctrine applies in this case, and the Court concludes that Tribank and Linear are not separate

2    entities for purposes of the agreements with Orient. As the evidence reveals, Stewart treated Tribank and

3    Linear as one corporation when dealing with Orient. Indeed, Stewart went as far as to cancel a contract

4    between Orient and Tribank via a contract with Linear. Further, an inequitable result will follow if the

5    forum selection clause is not enforced as Tribank would be permitted to enforce one term of the contract

6    – the compensation clause – which it favors, while avoiding enforcement of the forum selection clause –

7    which it disfavors.

8          In response to the motion to dismiss, Tribank offers ten or so reasons why this Court is a proper

9    forum to hear its Complaint. But the Court finds each of the reasons unavailing. Fundamentally, this

10   case is a straightforward contract dispute. Tribank contends it rendered services to Orient pursuant to a

11   contract under which it was to receive a 15% commission. Orient contends that if Tribank is asserting a

12   claim arising out of the Consulting Agreement, then it must litigate the claim in Hong Kong pursuant to

13   the forum selection clause contained in the written contract.

14         Accordingly, the Consulting Agreement is the agreement the Court must look toward in

15   determining whether the Central District of California is an appropriate venue. The Court concludes it is

16   not. The Consulting Agreement plainly provides that Hong Kong is the exclusive forum for litigation

17   arising out of and relating to the terms of the agreement. Therefore, the Central District of California is

18   not a proper venue, and Tribank's complaint must be dismissed. Fed. R. Civ. P. 12(b)(3).

19         Furthermore, none of Plaintiff's arguments lead to a different result. Broadly, Plaintiff's

20   arguments are unavailing because Plaintiff failed to raise them in response to Defendant's motion to

21   dismiss or on appeal and therefore has waived them. *See Cerniglia v. County of Sacramento*, 556 F.

22   Supp. 2d 1034, 1041 (E.D. Cal. 2008). More specifically, the Court finds that Plaintiff's arguments lack

23   merit. For instance, Tribank's argument that by removing this case from state court, Defendant waived

24   its right to argue that venue is improper is simply incorrect. Removal is a procedural tool, which gives

25   Defendants the right to elect (in appropriate cases) to have a federal court and not a state court hear the

26   case. In removing a case, a Defendant does not waive challenges to personal jurisdiction, subject matter

27   jurisdiction, venue, service of process, etc.; removal merely places the resolution of those questions in

28   the hands of a federal judge in the first instance. *IBC Aviation Serv., Inc. v. Compania Mexicana de*

5

1   *Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1013 ("It is clearly established that timely removal to

2   federal court does not waive a defendant's right to raise venue objections."). Similarly unavailing is

3   Plaintiff's argument that it should be permitted to repudiate the forum selection clause because it will

4   have no recourse if the action is dismissed. That is not the case. Plaintiff does have a forum for recourse:

5   the courts of Hong Kong. It is true that Plaintiff's recourse will be less convenient and more costly,

6   however that was the agreement Plaintiff drafted and signed. Further, in addition to the argument being

7   waived by Plaintiff's failure to raise it in opposition to the motion to dismiss, Plaintiff's vague

8   references to the location of witnesses and evidence along with its now-changed financial position and

9   inability to prosecute an action in Hong Kong do not convince the Court that this is "an exceptional case

10  [where] enforcing [the] forum selection clause will effectively preclude [Plaintiff its] day in court." *See*

11  *Murphy v. Schneider Nat., Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2003).

12          For each of the foregoing reasons, Plaintiff's arguments are unavailing and the Court concludes

13  that Plaintiff's Complaint must be dismissed for improper venue. Fed. R. Civ. P. 12(b)(3).

14          IT IS ORDERED that Plaintiff's Complaint be dismissed pursuant to Federal Rule of Civil

15  Procedure 12(b)(3).

16  August 14, 2013.

17                                                                   _____

18                                                                   MANUEL L. REAL
                                                                     UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28